UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROY BORDAMONTE<br><br>**Plaintiff,**<br><br>v.<br><br>**HETOR LORA, LUIS GUZMAN, GARY SCHAER, ALEX BLANCO, RALPH DANNA, CARLOS FIGUEROA, individually and in their official capacities, and the CITY OF PASSAIC.**<br><br>**Defendants.** | 17-cv-2642<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Roy Bordamonte brings this action against six individuals and the City of Passaic (collectively "Defendants"), alleging violations of Plaintiff's First Amendment right to freedom of speech pursuant to 42 U.S.C. §§ 1983, the New Jersey Civil Rights Act, N.J.S.A. 10:6–2, and the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq*. The matter comes before the Court on four motions for summary judgment filed by (1) Defendant Ralph Danna, ECF No. 91; (2) Defendants Carlos Figueroa, Luis Guzman, Hector Lora, and Gary Schaer, ECF No. 92 ("Lora Motion"); (3) Defendant City of Passaic, ECF No. 93; and (4) Defendant Alex Blanco, ECF No. 95. For the reasons set forth below, Defendants' motions are **GRANTED**.

I.  BACKGROUND

The parties largely agree about the factual events that form the basis for Plaintiff's claims. Plaintiff Roy Bordamonte was a member of the Passaic Police Department from 1994 to September 2019, rising to the rank of Sergeant on July 2, 2006 and maintaining that rank until his retirement. City of Passaic Mot., Ex. F, 6-7. Defendant Alex Blanco was the mayor of Passaic until November 17, 2016, when he pleaded guilty to federal bribery charges. Pl.'s Opp., Blanco Dep., 74. On November 17, 2016, the Passaic City Council unanimously voted to make Defendant Hector Lora the interim mayor. *Id.*, Lora Dep., 219. Defendant Gary Schaer was and is currently president of the Passaic City Council, and he preferred that Hector Lora proceed Blanco as mayor over Richard Diaz. *Id.* Schaer Dep., 17, 34-35. Diaz served as Passaic's Public Safety Director and was a candidate for mayor in the 2017 election. Interim Mayor Lora abolished the Director of

Public Safety position on December 20, 2016. *Id.* at Ex. O.[1]  Plaintiff Bordamonte attended the September 18, 2016 barbecue during which Diaz announced his candidacy. City of Passaic Mot., Ex F, 91-92.  Lora won the May 9, 2017 election and is the current mayor of Passaic.

Plaintiff Bordamonte was the Commanding Officer of the Quality of Life ("QOL") Unit from 2015 to October 2016, at which time the unit was disbanded by Defendant Chief of Police Luis Guzman. City of Passaic Mot., Ex. C, 8. The officers serving in the QOL Unit were transferred to patrol shifts of their choosing. City of Passaic Mot., Ex. F, 420-21. Plaintiff requested to be transferred to the night shift, which was under the command of Defendant Ralph Danna, a Lieutenant in the department with whom Plaintiff had a contentious relationship. *Id.* at 168, 174-75; Am. Compl. ¶ 8. Plaintiff claims that the dissolution of the QOL Unit, his transfer to the patrol night shift, and Danna's treatment of Plaintiff were in retaliation for his support for candidate Lora. Specifically, Plaintiff claims Danna gave him a hard time about using vacation days and teased him about his lack of computer proficiency. City of Passaic Mot., Ex. F, 687, 697; Am. Compl. ¶ 24. Plaintiff also contends that he was asked to bear false witness against Diaz during an internal affairs investigation concerning how a plastic evidence bag (which included confidential personal identifiers of civilians) found its way into Diaz's possession when Diaz served as Director of Public Safety. Specifically, Plaintiff states that Detective John Rodriguez asked him to give false testimony in violation of New Jersey's Conscientious Employee Protection Act. City of Passaic Mot., Ex. F, 259; Am. Compl. ¶¶ 56-58. Defendant Carlos Figueroa is a Lieutenant in the Passaic Police Department and the Commander of the Internal Affairs Division. City of Passaic Mot., Ex. C. Plaintiff claims that the Preliminary Notice of Discipline he received incident to the internal affairs investigation was retaliation for his refusal to cooperate as a witness against Diaz and for the March 18, 2017 traffic stop of Ricky Colon that resulted in Plaintiff's ticketing of Colon. Am. Compl. ¶¶ 35-37.

## II. PROCEDURAL HISTORY

Plaintiff Roy Bordamonte filed a Complaint on April 18, 2017 and an Amended Complaint on May 4, 2017. ECF Nos. 1 & 5. On August 8, 2017, this Court granted in part Defendant Blanco's motion to dismiss and dismissed Counts IV and V of the Amended Complaint as to Defendant Blanco only and Count III as to all Defendants. The following counts remain:

- **Count One**: Section 1983 claim against Defendants Schaer, Lora, Blanco, Guzman, and Danna for violation of Plaintiff's First Amendment rights;
- **Count Two**: NJSA 10:6-1 claim against Defendants Schaer, Lora, Blanco, Guzman, and Danna for violation of Plaintiff's First Amendment rights;

---

[1] Diaz filed a complaint alleging political retaliation that was dismissed with prejudice by this Court on January 7, 2020. City of Passaic Mot., Ex. P.

- **Count Four**: NJSA 43:19-1 claim against Defendants Schaer, Lora, Guzman, and the City of Passaic for violation of the Conscientious Employee Protection Act ("CEPA");
- **Count Five**: a respondeat superior claim against Defendant City of Passaic.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FRCP 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries its initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citation omitted). "The non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) (citation omitted).

## IV. DISCUSSION

### A. Defendants Have Demonstrated the Absence of a Genuine Dispute of Material Fact as to Each of Plaintiff's Claims

#### 1. *Plaintiff's Free Speech and Association Claims (Counts One and Two)*

Plaintiff claims, in essence, that he was retaliated against for supporting Richard Diaz, the losing candidate in the Passaic mayoral election, in violation of his freedoms of expression and association. To establish a First Amendment retaliation claim, a public employee must show that (1) his activity is protected by the First Amendment; (2) the activity was a substantial or motivating factor in the alleged retaliatory action, which, if proved, shifts the burden to the employer to prove that (3) the same action would have been taken if the activity had not occurred. *Falco v. Zimmer*, 767 F. App'x. 288, 299 (3d Cir. 2019) (quoting *Monroe v. Central Bucks School Dist.*, 805 F.3d 454, 466 (3d Cir. 2015)) (internal quotation marks and punctuations omitted). Here, Plaintiff argues that the allegedly adverse employment consequence he suffered in retaliation for supporting Diaz in the mayoral contest were that: (1) the Quality of Life Unit he commanded was disbanded and he was transferred to a shift and division of his selection; (2) Plaintiff's commanding officer, Defendant Danna, gave him a hard time about using his accrued vacation days after

Plaintiff requested a transfer to Danna's command; and (3) that Danna teased Plaintiff about his lack of computer proficiency. Plaintiff fails to point to any evidence showing that his support for Diaz was a substantial or motivating factor in these three employment consequences or that they are sufficiently adverse to qualify as retaliatory actions.

As to his transfer following the dissolution of the QOL Unit, Plaintiff was not singled out—he was treated the same as everyone else. The entire Unit was dissolved by the incoming Chief of Police, as was within his discretion, and Plaintiff, along with his fellow officers, were all given their choice of where they wanted to serve. City of Passaic Mot., Ex. F, 168-69, Ex. H. Plaintiff suffered no loss of rank, seniority, or base salary because the QOL Unit was disbanded. City of Passaic Mot. Ex. F, 168, 327, 420. Under New Jersey's Chief's Bill of Rights, Chief Guzman had the absolute right to deploy his police force in the manner he sees fit. See, N.J.S.A. 40A:14- 118; see also *Gitto v. City of Atlantic City*, 2013 WL 1830688, *5 (App. Div. 2013) ("A job reassignment with no corresponding reduction in wages or status is insufficient to qualify as a cognizable adverse employment action" and "emotional dissatisfaction with a move from one station to another cannot alone constitute an adverse employment action.") (internal quotations and citation omitted).

Plaintiff's other complaints of alleged retaliation stem from his interactions with his supervisor, Danna. After the QOL Unit was disbanded, Plaintiff was asked by Chief Guzman to pick the patrol shift he wanted. City of Passaic Mot., Ex. F, 168. Plaintiff requested the night shift which was under the command of Danna, who Plaintiff admittedly never got along with, and his request was granted. *Id.* According to Plaintiff, he and Danna argued over who made more overtime and whose work was more intense. *Id.* at 185. Plaintiff's complaints about Danna are narrowed down to two issues; first, he complains that Danna gave him a hard time about using all of his accrued vacation days, and second, he says Danna teased him about his lack of computer savvy. *Id.* at 669-70, 680-81, 687, 697. Plaintiff admits Danna approved 35 vacation days for him (which included Christmas Eve, Christmas Day, and New Year's Day) in a two-month work period, and that he ultimately utilized all of his vacation days. *Id.* Further, Plaintiff admitted he was always forgetting his computer login information and was not good with computers. *Id.* at 688. Danna issued a memo concerning the completion of warrants to all sergeants on Plaintiff's shift. *Id.* at 687; City of Passaic Mot., Ex. EE (C-Shift Sergeant's Guide (November 4th-14th)). Plaintiff was not singled-out in the memo. Ex. EE. "Even employment decisions which do violate employment contracts do not form the basis for 42 U.S.C. § 1983 actions, and the constitution should not be trivialized by being dragged into every dispute in state and local government." *Ferraro v. City of Long Branch*, 23 F.3d 803, 806 (3d Cit. 1994). The New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, has been interpreted analogously with 42 U.S.C. § 1983. *Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443 (D.N.J. 2011).

Defendants assert several other possible motivations for Chief Guzman's decision to abolish the QOL Unit unrelated to Plaintiff's political support for candidate Diaz. Chief Guzman advised Plaintiff that he believed that the QOL Unit was a liability for the police department. City of Passaic Mot., Ex. F, 344. An Internal Affairs Division investigation

4

into an incident involving Bordamonte and other members of the QOL Unit resulted in a reported authored by Defendant Figueroa that concluded: "I recommend that an evaluation of the Quality of Life Unit detail be conducted for the possible replacement and or retraining of the officers assigned to this unit, including D/Sergeant Roy Bordamonte. He has displayed a serious lack of professionalism which cannot be looked upon as acceptable by the subordinates he supervises." City of Passaic Mot., Ex. J. The Prosecutor's Office expressed concern regarding the QOL Unit's tactics. City of Passaic Mot., Ex. L, 49. Finally, Defendants point to the December 10, 2019 New Jersey Superior Court decision in *State v. Rafael Camey*, Ind. No. 14-11-00923—which followed the New Jersey Supreme Court's similar decision in *State v. Camey*, 217 A.3d 106, 109 (2019) condemning Plaintiff's tactics and affirming suppression of buccal swab DNA evidence obtained by Plaintiff or those under his command—concluding that Plaintiff illegally targeted individual who were homeless and Hispanic and violated their constitutional rights in order to secure convictions. Ex. M. The Court concludes that in light of this overwhelming evidence, the QOL Unit would have been disbanded in the absence of Plaintiff's political advocacy and affiliation.

### 2. Plaintiff's CEPA Claim (Count Four)

Plaintiff's whistleblowing claims are two-fold. First, he claims he was asked to give false testimony against Diaz during an investigation by Internal Affairs pertaining Diaz's possession of a police report; and second, he alleges he was retaliated against for issuing a ticket to Ricky Colon who was carrying Defendant Chief Guzman's Police Benevolence Association ("PBA") card. To establish a CEPA retaliation claim, Plaintiff must demonstrate that: (1) he reasonably believed that his employer's conduct was violating a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he performed a "whistleblowing" activity as defined by the statute; (3) an adverse employment action was taken against him; and (4) there was a causal connection between his whistleblowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 469 (2003). If Plaintiff can satisfy these initial hurdles, then the burden shifts to Defendants to set forth a legitimate nondiscriminatory reasons for its actions. *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999). Once Defendants have done so, "the burden shifts back to the plaintiff." *Id.* To meet this ultimate burden, Plaintiff must demonstrate "both that the reason [given by the employer] was false, and that [retaliation] was the real reason." *Id.* (internal citations omitted).

With regard to Plaintiff's claim that he was asked to give false testimony against Diaz, Plaintiff testified that Detective Rodriguez did not ask Plaintiff to say anything that was false, but rather that Detective Rodriguez "was trying to lead [Plaintiff] to say something." City of Passaic Mot. Ex. F, 554-55. Having reviewed the transcripts of Detective Rodriguez's interviews with Plaintiff concerning the investigation, the Court concludes that they contain no evidence that Rodriguez ever suggested or intimated that Plaintiff give false testimony. *See* City of Passaic Mot. Exs, S & T; Ex. F, 211. In the interview and in his deposition, Plaintiff admitted to giving the police reports to Diaz. City of Passaic Mot., Ex. F, 699. Plaintiff cannot establish that his employer engaged in any

5

conduct that violated a law, rule, or regulation. Additionally, the written reprimand that Plaintiff ultimately received for violating the chain of command is so minor and inconsequential that it does not qualify as an adverse employment action within the scope of CEPA. "[N]ot everything that makes an employee unhappy is an actionable adverse action" under CEPA. *Cokus v. Bristol Myers Squibb Co.*, 329 N.J. Super. 366, 378 (Law Div. 2002).

Plaintiff's claim that he was retaliated against for issuing a ticket to Colon is equally without evidence. Plaintiff's March 18, 2017 traffic stop of Colon was videotaped. City of Passaic Mot., Ex. FF. At the traffic stop, Colon gave Plaintiff a PBA card of a lieutenant in the police department and noticed that Colon also possessed a PBA card from Guzman. *Id.* Plaintiff took this PBA card and said that he was going to give it to Guzman. *Id.* Plaintiff claims that at this time, Colon "threated to have Defendant Guzman retaliate against him." Am. Compl. ¶ 37. But Colon can be heard saying to Plaintiff that when he talks to Guzman, to tell Guzman that you pulled me over. *Id.* Plaintiff never spoke to Chief Guzman about the ticket. *Id.* at Ex. F, 553. Colon paid the fine for the violation. *Id.* at Ex. GG. There is no evidence that Plaintiff suffered any adverse employment consequences as a result of this incident.

Because Plaintiff's underlying claims have no merit, the City of Passaic cannot be held liable on the kind of respondeat superior theory Plaintiff asserts in Count Five.

### B. **Plaintiff Fails to Point to Evidence in the Record Establishing a Genuine Issue of Fact**[2]

Instead of citing to any evidence in the record to support Plaintiff's claims of retaliation, Plaintiff's counsel poses questions in his opposition brief that seem to have only tangential relevance to this case. For instance, counsel queries in a subheading: "Is Gary Schaer the 'boss' of Passaic?," without explaining why an answer to this question creates a genuine issue of material fact as to whether Plaintiff was retaliated against. Pl.'s Opp., 8. Similarly, counsel for Plaintiff asks in another subheading: "Did Defendants Lora, Blanco, and Schaer lie in their depositions?," and proceeds to point out possible inconsistencies in Defendants' testimony that are not material to Plaintiff's claims. *Id.* at 6-8. Plaintiff's counsel's other quandaries are somewhat more related to the matter at hand: "Why was Plaintiff denied a return to the Detective Bureau?" and "Did the individual Defendants, or some of them, have an intent to harass Plaintiff based on his association

---

[2] After Defendants filed their replies to Plaintiff's Opposition to Defendants' summary judgment motions and briefing was closed, Plaintiff filed two certifications containing photographs of purported signature pages—the Bordamonte and Diaz Certifications. ECF No. 103. After determining to strike the untimely and improper certifications, ECF No. 106, the Court granted Plaintiff's request for reconsideration on the condition that Plaintiff refile the certifications in an acceptable format. ECF No. 110. Perplexingly, counsel for Plaintiff filed the same certificates containing photographs as signature pages. ECF No. 111. The Bordamonte and Diaz Certifications do not contain facts establishing genuine issues of material fact. If they did, however, the Court would not consider them.

with Defendant Lora's political opponent?" *Id.* at 6, 8-10.  But under these subheadings, Plaintiff fails to cite to any record evidence supporting his claims.  There may in fact be inconsistencies in Defendants' testimony regarding when Schaer and Lora learned of Blanco's criminal conviction, when they learned of Diaz's intention to run for mayor, and Schaer's feelings regarding Diaz's candidacy.  But Plaintiff fails to explain why these inconsistencies create issues of fact that are material to Plaintiff's claims.  The moving Defendants having carried their initial burden of demonstrating the absence of a genuine dispute of material fact, Plaintiff, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011).  Plaintiff fails to do this.

Plaintiff Bordamonte repeatedly states his belief that he was retaliated against for supporting candidate Diaz, but these beliefs never arise above speculation.  For instance, at his deposition, counsel for Defendants asked, "if you don't know which candidate Lieutenant Danna supported, on what are you basing the allegation that Lieutenant Danna retaliated against you for supporting Diaz?"  Plaintiff Bordamonte responded, "You want my opinion?," to which Defense counsel stated "I want facts."  Plaintiff responded "I don't have firsthand knowledge."  City of Passaic Mot., Ex. F, 675.  When questioned about the factual basis for his belief that all Diaz supporters were to be removed from their duties, Plaintiff stated, "That's just what I believe . . . Just my belief."  *Id.* at 421.  Throughout Plaintiff's testimony, this sort of mere speculation and bare assertions abound, uncorroborated by any other witness's testimony or documentary evidence.  Speculation and bare assertions are an insufficient basis upon which a jury could render a verdict in Plaintiff's favor.

## V. CONCLUSION

Defendants' motions for summary judgment, ECF Nos. 91, 92, 93, and 95 are **GRANTED**.  The matter is **DISMISSED WITH PREJUDICE**.


**Dated: October 28, 2020**                              */s/ William J. Martini*
                                                                          **WILLIAM J. MARTINI, U.S.D.J.**